1  JOHN P. KRISTENSEN (SBN 224132)
2  DAVID L. WEISBERG (SBN 211675)
   **KRISTENSEN WEISBERG, LLP**
3  12304 Santa Monica Blvd., Suite 100
4  Los Angeles, California 90025
   Telephone:  310-507-7924
5  Fax:  310-507-7906
6  *john@kristensenlaw.com*
   *david@kristensenlaw.com*
7
8  ***Attorneys for Plaintiff and all others similarly situated***

9  ### THE UNITED STATES DISTRICT COURT
   ### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10
11  MICHAEL MANAPOL, on behalf of
    himself and all others similarly
12  situated,

13          Plaintiff,

14      vs.

15
16  TINDER, INC., a California business
    entity; MATCH.COM, LLC, a Texas
17  limited liability corporation;
    IAC/INTERACTIVECORP. A New
18  York corporation; and DOES 1
    through 20, inclusive, and each of
19  them,

20          Defendants.

21
22
23
24
25
26
27
28

Case No.

**CLASS ACTION**

**COMPLAINT FOR VIOLATIONS OF:**

(1) **Unruh Civil Rights Act, Cal.** ***Civ. Code*** **§§ 51,** *et seq.***;**
(2) **Electronic Funds Transfer Act, 15 U.S.C. § 1693,** *et seq.***;**
(3) **Violation of Cal.** ***Bus. Prof. Code*** **§§ 17600,** *et seq.***;**
(4) **Violation of Cal.** ***Bus. Prof. Code*** **§§ 17500,** *et seq.* **("FAL");**
(5) **Violation of Cal.** ***Bus. Prof. Code*** **§§ 17200,** *et seq.* **("UCL"); and**
(6) **Violation of California Consumer Legal Remedies Act, Cal.** ***Civ. Code*** **§§ 1750,** *et seq.* **("CLRA").**

**DEMAND FOR JURY TRIAL**

**DECLARATION OF MICHAEL MANAPOL**

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

Plaintiff Michael Manapol ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following upon information and belief based upon personal knowledge:

## NATURE OF THE CASE

1.     Plaintiff brings this action for himself and others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of defendants TINDER, INC. (hereinafter "Defendant"[1] or "Tinder"), MATCH.COM, LLC, IAC/INTERACTIVECORP and DOES 1 through 20 (collectively "Defendants"), with regard to Tinder's misleading and illegal business practices, including gender and age discrimination in its pricing plans in violation of the Unruh Civil Rights Act, Cal. *Civ. Code* §§ 51, *et seq*.; violations of the Electronic Funds Transfer Act 15 U.S.C. § 1693, *et seq.* ("EFTA"); its practice of making automatic renewal offers and continuous service offers in violation of Cal. *Bus. & Prof. Code* §§ 17600, *et seq*., false advertising in violation of Cal. *Bus. & Prof. Code* §§ 17500, *et seq.* ("FAL"); other misleading, unfair, unlawful and fraudulent business practices in violation of Cal. *Bus. & Prof. Code* §§ 17200, *et seq.* ("UCL"); and California Consumer Legal Remedies Act, *Cal. Civ. Code* §§ 1750, *et seq.* that caused Plaintiff and other consumers damages.

2.     Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to a Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

---

[1]   Only Tinder is referenced as Defendant when used in this Complaint. The other defendants are mentioned by name, or all defendants are referenced collectively as "Defendants". Match.com, LLC and IAC and not referred to as "Defendant". This is for purposes of structure and organization and the relationships between the Defendants are defined in paragraphs eight (8) through ten (10). The other defendants are jointly and severally liable for Tinder.

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

3.      While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4.      Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## PARTIES

5.      Plaintiff Michael Manapol is a natural person residing in Los Angeles County in California.

6.      Defendant TINDER, INC. ("Tinder" or "Defendant") is a California corporation with its principal place of business at 8800 Sunset Boulevard, West Hollywood, California 90069.  The specific legal entity is currently unknown as there is no Tinder, Inc. registered with the California Secretary of State.  Plaintiff is informed and believes that Tinder conducted and conducts business in Los Angeles County.

7.      Defendant MATCH.COM, LLC ("Match") is a Delaware corporation with its principal place of business in Dallas, Texas.  Match's agent for service of process is CT Corporation System, located at 818 West Seventh Street, Los Angeles, California 90017.  Plaintiff is informed and believes that Match conducted and conducts business in Los Angeles County.

8.      IAC/INTERACTIVECORP ("IAC") is the parent company and majority shareholder of both Tinder and Match.  IAC's principal place of business is located at 555 West 18th Street, New York New York 10011.  IAC's agent for service of process is CT Corporation System, located at 818 West Seventh Street, Los Angeles, California 90017.  Plaintiff is informed and believes that IAC conducted and conducts business in Los Angeles County.

9.      The above named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 20, inclusive, are

currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

10.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times, each and every defendant was acting as an agent and/or employee of each of the other Defendants, and was the owner, agent, servant, joint venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes, and thereon alleges, that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

11.    At all times mentioned herein, each and every defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

## JURISDICTION & VENUE

12.    At all times relevant, Plaintiff is an individual residing within the State of California.

13.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendants conducted business in the State of California, and that Tinder is based in West Hollywood, California. Plaintiff is informed and believes, and thereon alleges, that at all time relevant, Defendant's sales of products and services are governed by the controlling law in the state in which they do business and from which the sales or products and services, and the allegedly unlawful acts originated, which is California.

14.    Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of Los Angeles, California, seeks relief on behalf of a nationwide class,

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

1   which will result in at least one class member belonging to a different state than

2   that of Tinder, a company whose principal place of business and state of

3   incorporation are in the State of California.  In addition, the matter in controversy

4   exceeds $5,000,000 exclusive of interest of costs.  Therefore, both diversity

5   jurisdiction and the damages threshold under the Class Action Fairness Act of

6   2005 ("CAFA") are present, and this Court has jurisdiction.

7          15.     Further, this Court has jurisdiction under 28 U.S.C. § 1331, because

8   this action is brought pursuant to the EFTA, 15 U.S.C. 1693 *et seq*.

9          16.     Venue is proper pursuant in the United States District Court for the

10   Central District of California pursuant to 28 U.S.C. § 1391 for the following

11   reasons: (i) the conduct complained of herein occurred within this judicial district;

12   (ii) Defendant resides in this judicial district; and, (iii) Defendant conducted

13   business within this judicial district at all times relevant.

14          17.     Because all defendants conduct business within the State of

15   California, personal jurisdiction is established.

16                          **FACTUAL ALLEGATIONS**

17   *General Background, False Advertising and Unfair/Deceptive Trade Practices*

18          18.     In or around early 2014, Plaintiff downloaded an application ("app")

19   called Tinder from Defendant onto his iPhone mobile device.  Tinder is an online

20   version of a nightclub where single people meet.  Tinder markets itself as a dating

21   application for mobile phones[2].

22   ///

23   ///

24   ///

25   ///

26   ///

27

28   _____

     [2]    See Tinder's own website at http://www.gotinder.com.

19.   Tinder utilizes a user's location using the GPS built into their phone, then uses their Facebook information to create a profile.  A Tinder profile is made up of a user's first name, age, photos and any pages they have 'liked' on Facebook.

20.   Tinder then finds a user potential matches within a nearby geographical radius, and suggests potential matches, which a user has the option to like or pass.

21.   Tinder's primary draw for consumers is a feature known as a "swipe," which is the act of swiping one's finger on their smart phone's touch screen within the Tinder app either right or left, in order to approve or pass, respectively, on a suggested potential match.  If both users swipe right and "like" one another, Tinder will create a direct line of communication between the individuals, and allow them to start messaging one another.

22.   In downloading the Tinder app, Plaintiff was informed, by various advertisements, promotions, and websites that Defendant's app was a "free online dating app."  Defendant holds itself out to be free on its own website, stating "Tinder is free and is available on iPhone and Android phones."

23.   Tinder's advertisement and promotions through the iTunes store promotes Tinder as "free" and states: "To download the free app Tinder by Tinder Inc., get iTunes now," and also that it is a "free download."[3]

24.   Indeed, Tinder is universally advertised as "freeware"[4] and "free" software.[5]

---

[3]   See Tinder's advertisement offered through the Apple iTunes store at https://itunes.apple.com/us/app/tinder/id547702041?mt=8

[4]   See Tinder's advertisement offered through a third party App store at http://downloads.tomsguide.com/Tinder,0301-52985.html

[5]   See Tinder's advertisement offered through  the Android store at http://xyo.net/android-app/tinder-e08Z.0I/

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

25.   A true and correct copy of the screenshot from Defendant's ads on Xyo and the Google App Store is shown as follows[6]:





26.   Until very recently, Tinder has been a free app and allowed users to enjoy unlimited free swipes.

27.   Tinder has never advertised, represented, or otherwise indicated to its customers, including Plaintiff, that the use of its services will require any form of payment.  Rather, Defendant continuously held itself out to be a service that was

---

[6]   https://play.google.com/store/apps/details?id=com.tinder&hl=en

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

entirely free to consumers, and engaged in a widespread advertising campaign that its services were free.

28.     In agreeing to download and use Defendant's Tinder app, Plaintiff actually relied upon Defendant's representations that downloading the app would permit Plaintiff to meaningfully use Defendant's app uninterrupted and for the foreseeable future, without payment of any additional fees or costs.

29.     Said reliance is based upon Defendant's representations that its product was "free", as well as the fact that Defendant did not warn Plaintiff, nor other consumers similarly situated, that further fees may apply to ensure uninterrupted usage of Defendant's app, that Defendant's app may, at a later time, be rendered obsolete by Defendant's own affirmative business practices.

30.     Relying on these representations, Plaintiff and other class members became entrenched in the use of Defendant's Tinder app, foregoing the use of other online dating sites.

31.     Defendant offered these free services in order to enlist a user base of tens or hundreds of millions of users, with the ultimate goal of later changing the rules of participation, and deceptively and forcibly migrating a substantial percentage of its user base to a paid subscription model.

32.     Had Defendant warned Plaintiff that additional fees may apply, Plaintiff would have reconsidered his use of Defendant's app.

33.     Failure to disclose that additional fees may apply unfairly induced Plaintiff's downloading of Defendant's app, as he reasonably believed it to be a "free" service.

34.     In agreeing to download and use Defendant's Tinder app, Plaintiff understood that his "payment" and Defendant's profit model would revolve around third party advertising such as banner ads, as is common in other free social networking sites and apps.

///

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

35.     Following years of benefiting from Defendant's marketing, Defendant abruptly began informing consumers on or about March 2, 2015, that consumers would no longer be able to utilize Tinder for the functions which consumers had previously enjoyed free use.

36.     According to Defendant, consumers that desired to continue using Tinder uninterrupted are now required to purchase an account-level subscription of Tinder Plus, at a cost of at least $2.99 per month.

37.     Specifically, Defendant abruptly informed consumers, including Plaintiff, that they would no longer be able to enjoy unlimited swipes unless they signed up for a Tinder Plus account.

38.     Defendant's abrupt policy change constitutes an unfair and deceptive trade practice, put into place to forcibly migrate users to paid subscription services, in order to receive the same services that had previously been provided and advertised as free of charge.

39.     Defendant benefitted greatly from its false advertising scheme, by enlisting a massive user base under the guise of a "free" service, and then profiting off of their subsequent necessary purchase of subscription services.

40.     Defendant gave no advance notice of this change to Plaintiff or other consumers.

41.     In fact, Plaintiff first learned of this drastic business model change during the middle of his use of the Tinder App, when a screen popped up on his smart phone's screen recently and stated "You're out of likes.  Get more likes in 0:00:00.  Get unlimited likes with Tinder Plus…."  Plaintiff would then be put on time out for a set period of time until he could swipe again.  The time periods extended based on Plaintiff's swiping habits.

///

///

///

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

42.    A true and correct copy of the screenshot from another user's iPhone showing this message is shown as follows:



43.    Plaintiff was under the impression he already had the ability to get "unlimited swipes" without having to pay to Defendant.  Indeed, this was the "free" service that had been advertised to Plaintiff.   Plaintiff believes that the change in policy was likely initiated by IAC after its purchase of Tinder and/or a controlling interest of Tinder.

44.    Having unlimited swipes is a necessary requirement for a user to meaningfully use the Tinder app, due in large part to the vast majority of users' matches being either fake users, escort services, or pornography bots.

45.    For these reasons, the limited number of swipes Plaintiff was restricted to prevented him from effectively using the Tinder app at all.

46.    In a classic bait-and-switch, Tinder utilized years of clever marketing, by advertising free social networking and online dating services to

consumers, enticing them to become entrenched and "addicted"[7] to the Tinder app's system's online club, before unexpectedly taking away the very services its customers relied on and enjoyed about the Tinder app, and forcing them to unexpectedly pay to receive the same level of service they had originally signed up for upon downloading the Tinder app.

47.    Upon being unexpectedly provided notice by Defendant that the continued use of Tinder would require additional payment, Plaintiff reluctantly purchased a one-month subscription to the Tinder Plus app, for $19.99.

48.    Had Plaintiff known that Defendant planned to abruptly, unfairly and deceptively induce Plaintiff into paying additional subscription fees to use its "free" services, Plaintiff would not have done so.

49.    In so misleading Plaintiff and other similarly situated consumers, Defendant deceived Plaintiff and others into believing that the product they downloaded was no longer serviceable and available for use, as part of a widespread and systemic ruse to unfairly, fraudulently and unlawfully induce said consumers into purchasing paid subscription services rather than continue using the already downloaded, free and clear, Tinder app services, at considerable and previously undisclosed additional expense.

50.    In inducing Plaintiff, to download and use Defendant's app, Defendant did not inform Plaintiff that additional fees and a subscription to Tinder Plus would be required to receive a reasonably necessary number of regular swipes, rendering the Tinder App worthless to Plaintiff, had he not purchased a Tinder Plus subscription.

51.    This misrepresentation and omission was material to Plaintiff's purchase of the Tinder Plus subscription from Defendant.

///

---

[7]    http://www.huffingtonpost.com/2013/04/09/tinder-dating-app_n_3044472.html

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

52.     Regardless of whether Defendant's representations to Plaintiff were true or untrue, such statements had a tendency to mislead Plaintiff and other similarly situated consumers, who relied upon such representations and either ceased use of the app (saving Defendant additional maintenance expense by way of such misrepresentations), or were misled/forced into purchasing a Tinder Plus subscription at additional expense.

53.     Such reliance was reasonable, in light of Defendant's misleading representations.

54.     Furthermore, Plaintiff is not alone; Defendant has improperly induced thousands of other consumers to either discontinue their use of Defendant's app or pay a subscription fee.  This act and omission constitutes unlawful, unfair, and fraudulent conduct under California's Unfair Competition Law, Cal. *Bus. & Prof. Code* §§ 17200 *et seq.* (the "UCL"); California's False Advertising Law, Cal. *Bus. & Prof. Code* §§17500, et seq. (the "FAL"); and the California Legal Remedies Act, Cal. *Civ. Code* §§ 1750, *et seq.* (the "CLRA").

55.     Some examples of consumer complaints regarding Tinder's unfair, deceptive and unlawful and fraudulent conduct follow:

> Sebastian Frohm March 2, 2015 – "I'm done The way you guys are trying to monetize the app is garbage.  Really?  I have to pay if I like too many people?  Immediately uninstall.  Thanks guys."

> Danny B March 4, 2015 – "I 9 bucks a month? I'd rather have ads every 20 swipes than this money grab crap.  You have lost a daily user.  Goodbye"

> Mike March 3, 2015 – "Stopped using I don't support companies who try to edge out older users by charging them more.  Sorry Tinder not everyone on your app can be young and hot"

> Arune Brekk March 3, 2015 – "Completely ruined by monetization and spam.  Wow, just when I thought this app couldn't get any more annoying with the recent onslaught of spam accounts, you go and start charging for features.  And charging twice as much for people over 30?! It's like you're trying to tank your app.  Well, it was a

| good run while it lasted."[8] |
| --- |

56.     More consumer complaints regarding these deceptive practices are present on the Google App store, and other such online consumer forums.[9]

### *California's Automatic Purchase Renewal Statute*

57.     At all times relevant, Defendant made and continues to make automatic renewal offers and continuous service offers, as those terms are defined by Cal. *Bus. & Prof. Code* §§ 17600, *et seq*. ("California's Automatic Purchase Renewal Statute") to Plaintiff and other consumers similarly situated.

58.     At the time Plaintiff purchased a subscription, Defendant failed to present Defendant's automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner, as defined by California's Automatic Purchase Renewal Statute, before the subscription or purchasing agreement was fulfilled, and in visual or temporal proximity to Defendant's request for consent to the offer.

59.     At the time Plaintiff purchased this subscription, Defendant charged Plaintiff for an automatic renewal offer without first obtaining Plaintiff's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

60.     At the time Plaintiff subscribed to Defendant's services, Plaintiff was subjected to Defendant's unlawful policies and/or practices, as set forth herein, in violation of Cal. *Bus. & Prof. Code* §§ 17600, *et seq*.

61.     The material circumstances surrounding this experience by Plaintiff were the same, or nearly the same, as the other class members Plaintiff proposes to represent, and Plaintiff and all putative class members were required to pay, and did pay, money for this subscription marketed and sold by Defendant.

---

[8]     http://img.wonderhowto.com/img/original/60/15/63561061001686/
0/635610 610016866015.jpg

[9]     https://play.google.com/store/apps/details?id=com.tinder&hl=en

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

*Electronic Funds Transfers Act Violations*

62.     Plaintiff provided Apple with his bank card number, through the iTunes store.

63.     Defendant subsequently charged Plaintiff's account in the amount of $2.99.  Plaintiff was never informed that his financial information would be retained for future automatic payments.

64.     On or about April 9, 2015, Plaintiff began to notice monthly re-occurring charges being automatically deducted from his account by Defendant.

65.     After some investigation, Plaintiff discovered that Defendant were deducting sums from his account, on a recurring basis, in order to make payments towards his Tinder Plus Account, despite his never providing Tinder written authorization to make these deductions.

66.     Defendant continued and continues to deduct this monthly sum from Plaintiff without Plaintiff's authorization.

67.     Further, Defendants did not provide to Plaintiff, nor did Plaintiff execute, any written or electronic writing memorializing or authorizing the recurring or automatic payments.

68.     Plaintiff did not provide Defendant either with a written or an electronic signature authorizing the recurring or automatic payments.

69.     Plaintiff alleges such activity to be in violation of the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA"), and its surrounding regulations, including, but not limited to, 12 C.F.R. §§1005.7, 1005.8, and 1005.9.

*Unlawful Price Discrimination Based on Gender and Sex*

70.     In or about March 2015, after rolling out its new forced migration to Tinder Plus, Tinder announced publically to NPR that it would be charging $9.99 to consumers for these services (at a 50% discount), but notably, that any individual who was over 30 years of age would be charged $19.99 for the

identical services.[10]

71.    Plaintiff purchased a Tinder Plus account for $19.99, and was not offered a discount by Tinder, due to his being over 30 years of age.

72.    Tinder continues to make such discounts available to customers on the sole basis of their age.

73.    In a statement to NPR, Tinder defended the move, asserting that testing proved the viability of the tiered pricing:

> "Over the past few months, we've tested Tinder Plus extensively in several countries," said Tinder spokeswoman Rosette Pambakian. "We've priced Tinder Plus based on a combination of factors, including what we've learned through our testing, and we've found that these price points were adopted very well by certain age demographics. Lots of products offer differentiated price tiers by age, like Spotify does for students, for example. Tinder is no different; during our testing we've learned, not surprisingly, that younger users are just as excited about Tinder Plus but are more budget constrained and need a lower price to pull the trigger."

74.    Defendant offers no discounts for its Tinder Plus services, than that offered to consumers based solely upon their age.   However, woman receive more favorable swiping terms than man, which is akin to free entrance to Ladies Night, a practice deemed illegal by the California Supreme Court.

75.    On or about April 20, 2015, Plaintiff purchased a Tinder Plus subscription for $19.99, from Tinder through the Tinder App.  Plaintiff was charged a total of $19.99 for the purchase.  Plaintiff alleges on information and belief that he could have obtained a better rate if he were under 30 years of age, or represented to Tinder that he was under 30 years of age.  Plaintiff is not under 30 years of age, and was not made aware of any potential discounts at the time of his purchase of Tinder Plus.

---

[10]   See   http://www.npr.org/blogs/alltechconsidered/2015/03/02/390236051/tinders-premium-dating-app-will-cost-you-more-if-youre-older

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

76.     Not only is the price discriminatory based on age, it also discriminates based on gender.   Based on information and belief, Tinder provides swipes or uses with and without Tinder Plus at a more favorable rate to women based solely on their gender.

77.     The objective of the Unruh Civil Rights Act is to prohibit businesses from engaging in unreasonable, arbitrary or invidious discrimination.  The Unruh Civil Rights Act applies not merely in situations where businesses exclude individuals altogether, but where treatment is unequal.  For purposes of the Unruh Civil Rights Act, unequal treatment includes offering price discounts on an arbitrary basis to certain classes of individuals.  There is no requirement that the aggrieved party must demand equal treatment and be refused.

78.     The Act must be construed liberally in order to carry out its purpose.

79.     Defendant's discriminatory pricing scheme is arbitrary.

### CLASS ALLEGATIONS

80.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or other applicable law, on behalf of himself and all others similarly situated, as a member of the proposed class (hereafter "the Class") defined as follows:

> Class[11]:
>
> > All persons in the United States that downloaded Defendant's app, Tinder, at any time prior to March 2, 2015.
>
> EFTA Subclass:
>
> > All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendants without Defendants obtaining a written authorization

---

[11]   Plaintiff reserves the right to bring a Subclass based on California members only of the Class and Subclasses listed.

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of the Complaint.

Auto-Renewal Subclass:

All persons in the United States that purchased a subscription from Defendant via Defendant's App as part of an automatic renewal plan or continuous service offer for products and services from Defendant within the four years prior to the filing of this Complaint.

Price Discrimination Subclass:

All persons in the United States that purchased a subscription from Defendant via Defendant's App, and who were charged a rate that exceeded the rate available for a comparable purchase by an individual who was offered a discount based on their reported age.

Gender Discrimination Subclass:

All persons in the United States that purchased a subscription from Defendant via Defendant's App, and who were charged a rate that exceeded the rate available for a comparable purchase by an individual who was offered a discount based on their reported sex, including when the changed rate was offered due to their reported sex.

81.    Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class are any judges, justices or judicial officers presiding over this matter and the members of their immediate

families and judicial staff.

82. Plaintiff does not know the exact number of persons in the Class or Subclasses, but believes them to be in the several hundreds, if not thousands, making joinder of all these actions impracticable.

83. The identity of the individual members is ascertainable through Defendant's and/or Defendant's agents' records or by public notice.

84. There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class.

85. Plaintiff will fairly and adequately protect the interest of the Class.

86. Plaintiff has retained counsel experienced in consumer class action litigation.

87. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts involving Defendant's practices.

88. A class action is a superior method for the fair and efficient adjudication of this controversy.

89. Class-wide damages are essential to induce Defendants to comply with the federal and state laws alleged in the Complaint.

90. Class members are unlikely to prosecute such claims on an individual basis since the individual damages are small.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, e.g., securities fraud.

91. Plaintiff and the Class seek injunctive relief against Defendants to prevent Defendants from forcing consumers to purchase a subscription for Defendant's app and to prevent Defendants from charging consumers based on their gender or age.

92. Defendant has acted on grounds generally applicable to the Class thereby making appropriate final declaratory relief with respect to the Class as a whole.

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

93.     Members of the Class are likely to be unaware of their rights.

94.     Plaintiff contemplates providing notice to the putative class members by direct mail in the form of a postcard and via publication.

95.     Plaintiffs request certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

96.     This action is properly maintainable as a class action.  This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements for a class action.

97.     **Numerosity**:  The proposed Class is so numerous that individual joinder of all members is impracticable.  Due to the nature of the trade and commerce involved, Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more.   Plaintiff alleges that the Class may be ascertained by the records maintained by Defendants.

98.     Plaintiff and members of the Class were harmed by the acts of Defendant(s) in at least the following ways:  violation of the Unruh Civil Rights Act, Cal. *Civ. Code* §§ 51, *et seq.*, violations of the Electronic Funds Transfer Act 15 U.S.C. § 1693, *et seq.*, its practice of making automatic renewal offers and continuous service offers in violation of Cal. *Bus. & Prof. Code* §§ 17600, *et seq.*,; false advertising in violation of Cal. *Bus. & Prof. Code* §§ 17500, *et seq.* ("FAL"); other misleading, unfair, unlawful and fraudulent business practices in violation of Cal. *Bus. & Prof. Code* §§ 17200, *et seq.* ("UCL"); and California Consumer Legal Remedies Act, *Cal. Civ. Code* §§ 1750, *et seq.* that caused Plaintiff and other consumers damages.

99.     **Common Questions of Law and Fact Predominate**:  The questions of law and fact common to the Class predominate over questions affecting only individual class members, in that the claims of all Class members for each of the

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

claims herein can be established with common proof, and include, but are not limited to, the following:

(a)   Whether Defendants' practices are "unfair" as defined by Cal. *Bus. & Prof. Code* § 17200;

(b)   Whether Defendants' practices are "illegal" as defined by Cal. *Bus. & Prof. Code* § 17200;

(c)   Whether Defendants' practices are "fraudulent" as defined by Cal. *Bus. & Prof. Code* § 17200;

(d)   Whether such practices violate Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;

(e)   Whether Defendants violated Cal. *Bus. & Prof. Code* §§ 17500, *et seq.*;

(f)   Whether Defendants violated the Electronic Funds Transfers Act 15 U.S.C. §1693 *et. seq.*;

(g)   Whether Defendants violated Cal. *Bus. & Prof. Code* §§ 17600;

(h)   Whether Defendants' gender based pay structure violated the Unruh Civil Rights Act, Cal. *Civ. Code* §§ 51 *et seq.*;

(i)   Whether Defendants' age based pay structure violated the Unruh Civil Rights Act, Cal. *Civ. Code* §§ 51 *et seq.*

(j)   Whether Defendants charged Plaintiff and class members' payment method for an automatic renewal or continuous service without first obtaining Plaintiff's and class members' affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms;

(k)   Whether Defendant's Terms and Conditions contains the automatic renewal offer terms and/or continuous service offer terms as defined by Cal. *Bus. & Prof. Code* § 17601;

(l)   Whether Defendant failed to present the automatic renewal offer

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

1  terms or continuous service offer terms in a clear and conspicuous

2  manner before the subscription or purchasing agreement was

3  fulfilled, and in visual or temporal proximity to the request for

4  consent to the offer;

5  (m)  Whether Cal. *Bus. & Prof. Code* § 17603 provides for restitution for

6  money paid by class members in circumstances where the goods and

7  services provided by Defendant are deemed an unconditional gift;

8  (n)  Whether Plaintiff and the Class are entitled to restitution under Cal.

9  *Bus. & Prof. Code* §§ 17200-17203;

10  (o)  Whether Plaintiff and class members are entitled to declaratory relief,

11  injunctive relief and/or restitution under Cal. *Bus. & Prof. Code* §

12  17535;

13  (p)  The proper formula(s) for calculating and/or restitution owed to

14  Class members;

15  (q)  Whether members of the EFTA Subclass entered into agreements

16  with Defendant to have automatic, or recurring, electronic payments

17  drawn from their personal accounts to be paid to Defendants towards

18  settlement of the Class members' alleges services received by

19  Defendants.

20  (r)  Whether the members of the EFTA Subclass were not provided with,

21  nor did they execute, written agreements memorializing the

22  automatic or recurring electronic payments.

23  (s)  Whether Defendants did not request, nor did it provide, EFTA

24  Subclass members with written agreements memorializing the

25  automatic or recurring electronic payments;

26  (t)  Whether the members of the EFTA Subclass did not provide either a

27  written ("wet") or otherwise electronic signature authorizing the

28  automatic or recurring electronic payments;

(u)   Whether Defendants took unauthorized payments from EFTA Subclass members' accounts, despite not providing written or electronic authorization for payments to be drawn from their accounts;

(v)   Whether members of the Classes are entitled to statutory damages;

(w)   Whether members of the Classes are entitled to declaratory relief; and,

(x)   Whether members of the Classes are entitled to injunctive relief.

100.   **Typicality**:  Plaintiff's claims are typical of the claims of members of the Class, as Plaintiff was subject to the same common course of conduct by Defendant(s) as all Class members.  The injuries to each member of the Class were caused directly by Defendant(s)' wrongful conduct as alleged herein.

101.   **Adequacy of Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in handling complex class action litigation.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class, and have financial resources to do so.

102.   **Superiority of Class Action**: A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Class members have little interest in individually controlling the prosecution of separate actions because the individual damage claims of each Class member are not substantial enough to warrant individual filings.  In sum, for many, if not most, Class members, a class action is the only feasible mechanism that will allow them an opportunity for legal redress and justice.  Plaintiff is unaware of any litigation concerning the present controversy already commenced by members of the Class.  The conduct of this action as a class action in this forum, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

system, and protects the rights of each Class member.

103.   Moreover, individualized litigation would also present the potential for varying, inconsistent, or incompatible standards of conduct for Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  The adjudication of individual Class members' claims would also, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.

104.   Plaintiff and the members of the Class have suffered and will continue to suffer harm as a result of Defendant(s)' unlawful and wrongful conduct.  Defendant(s) have acted, or refused to act, on gorunds generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

### FIRST CAUSE OF ACTION

**(VIOLATION OF THE UNRUH CIVIL RIGHTS ACT,**

**CALIFORNIA CIVIL CODE §§ 51, *ET SEQ.*)**

**(Against All Defendants on Behalf of Plaintiff and the Price Discrimination Subclass and the Gender Discrimination Subclass)**

105.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

106.   California's Unruh Civil Rights Act ("UCRA"), Cal. *Civ. Code* §§51, *et seq.*, prohibits arbitrary discrimination by businesses on the basis of specified classifications, including age and gender

107.   The objective of the Unruh Civil Rights Act is to prohibit businesses from engaging in unreasonable, arbitrary or invidious discrimination.  The Unruh Civil Rights Act applies not merely in situations where businesses exclude

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

1  individuals altogether, but where treatment is unequal.  For purposes of the Unruh

2  Civil Rights Act, unequal treatment includes offering price discounts on an

3  arbitrary basis to certain classes of individuals.  There is no requirement that the

4  aggrieved party must demand equal treatment and be refused.

5       108.   UCRA must be liberally construed to accomplish this purpose.

6       109.   Defendants discriminated in violation of a reasonable regulation, and

7  the discrimination was not rationally related to the services it performs.

8       110.   The Act's remedial provisions are set forth in Cal. *Civ. Code* §

9  52(a), which provides:

10          Whoever denies, aids or incites a denial, or makes any

11          discrimination or distinction contrary to Section 51, 51.5, or

12          51.6, is liable for each and every offense for the actual

13          damages and any amount that may be determined by a jury, or

14          a court sitting without a jury, up to a maximum of three times

15          the amount of actual damage but in no case less than four

16          thousand dollars ($4,000), and any attorney's fees that may be

17          determined by the court in addition thereto, suffered by any

18          person denied the rights provided in Section 51, 51.5, or 51.6.

19       111.   Plaintiff need not prove that he suffered actual damages to

20  recover the independent statutory damages of $4,000.  Plaintiff and the

21  members of the Price Discrimination Subclass and the members of the

22  Gender Discrimination Subclass were injured by Tinder's violations of Cal.

23  *Civ. Code* § 51, *et seq.* and bring this action to recover statutory damages

24  and attorney's fees.

25  ///

26  ///

27  ///

28  ///

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

## SECOND CAUSE OF ACTION

### (VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT)

### (Against All Defendants on Behalf of Plaintiff and the EFTA Subclass)

112.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

113.   Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

114.   Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

115.   Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

116.   Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."  *Id.* at ¶10(b), comment 5.  The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable."  *Id.* at ¶10(b), comment 6.

117.   Defendant has debited Plaintiff's and also the EFTA Subclass members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from Plaintiff's account, and also the EFTA Subclass members'

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

1  accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a),

2  and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

3      118.   Defendant has debited Plaintiff's account and also the EFTA

4  Subclass members' bank accounts on a recurring basis without providing a copy

5  of a written authorization signed or similarly authenticated by Plaintiff or the

6  EFTA Subclass members for preauthorized electronic fund transfers, thereby

7  violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section

8  205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

9  ### THIRD CAUSE OF ACTION

10  **(VIOLATION OF THE CALIFORNIA AUTOMATIC PURCHASE RENEWAL STATUTE,**

11  **CALIFORNIA BUS. & PROF. CODE §§ 17600, *ET SEQ.*)**

12  **(Against All Defendants on Behalf of Plaintiff**

13  **and the Auto-Renewal Subclass)**

14      119.   Plaintiff hereby incorporates by reference and re-alleges each and

15  every allegation set forth in each and every preceding paragraph of this

16  Complaint, as though fully set forth herein.

17      120.   In or about 2015, as set forth above, Defendants have engaged in the

18  practice of making automatic renewal offers and continuous service offers, as

19  those terms are defined by Cal. *Bus. & Prof. Code* §§ 17600, *et seq*. ("California's

20  Automatic Purchase Renewal Statute"), to California consumers and the general

21  public.

22      121.   Plaintiff and members of the Auto-Renewal Subclass have suffered

23  an "injury in fact" and have lost money and/or property as a result of Defendants':

24      (a)    failure to present Defendant's automatic renewal offer terms or

25             continuous service offer terms in a clear and conspicuous manner

26             before the subscription or purchasing agreement is fulfilled and in

27             visual proximity, or in the case of an offer conveyed by voice, in

28             temporal proximity, to the request for consent to the offer;

(b)    charges to the consumer's credit or debit card, or the consumer's account, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms; and

(c)    failure to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer; and where Defendant also fails to disclose in the acknowledgment how to cancel, and alos allow the consumer to cancel, before the consumer pays for the goods or services, in violation of Cal. *Bus. & Prof. Code* §§ 17600, *et seq.*

122.    As a direct and proximate result of Defendants' aforementioned conduct and representations, Defendants received and continues to hold monies rightfully belonging to Plaintiff and other similarly situated consumers

123.    As a direct and proximate result of Defendants' violations of Cal. *Bus. & Prof. Code* §§ 17600, *et seq*., Plaintiff and members of the Auto-Renewal Subclass are entitled to a declaration that Defendants violated the California Automatic Purchase Renewal Statute.

124.    Plaintiff and the Auto-Renewal Subclass are also entitled to and hereby seek injunctive relief prohibiting such conduct in the future.

## FOURTH CAUSE OF ACTION

### (VIOLATION OF THE CALIFORNIA FALSE ADVERTISING ACT, CALIFORNIA BUS. & PROF. CODE §§ 17500, *ET SEQ.*)

### (Against All Defendants on Behalf of Plaintiff and the Class)

125.    Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

126.   Pursuant to Cal. *Bus. & Prof. Code* §§ 17500, *et seq.*, ("FAL") it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

127.   Defendant misled consumers by making misrepresentations and untrue statements about the Tinder App, namely, by instructing Plaintiff and other Class Members that "Tinder is free and is available on iPhone and Android phones," when in fact, additional subscription fees are necessary for consumers to meaningfully use the Tinder App and the price point is based on age and gender. Defendant failed to disclose to consumers, at the time of their download of the Tinder app, that additional subscription fees would be required (and based on age and gender), or that they would not be able to receive unlimited swipes. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members into paying more for something they reasonably believed they had already purchased.

128.   As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property.  Plaintiff reasonably relied upon Defendant's representations regarding the Tinder App, namely that the Tinder App was downloaded free and clear, and would continue to provide unlimited swipes free of charge without any additional payment.  In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members downloaded the Tinder App.  In turn, Plaintiff and other Class Members were provided with an App that turned out to be of significantly less value than what they were led to believe they had purchased, and therefore Plaintiff and other Class Members have suffered injury in fact.

129.   The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.  Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members, Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

## FIFTH CAUSE OF ACTION

### (VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CALIFORNIA BUS. & PROF. CODE §§ 17200, *ET SEQ.*)

### (Against All Defendants on Behalf of Plaintiff and the Class)

130.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

131.   Cal. *Bus. & Prof. Code* §§ 17200, *et seq*., ("UCL") prohibits any "unlawful, unfair or "fraudulent" ... business act or practice."

### *UNFAIR*

132.   Defendant's acts, omissions, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

1    133.   In order to satisfy the "unfair" prong of the UCL, a consumer must

2  show that the injury: (1) is substantial; (2) is not outweighed by any

3  countervailing benefits to consumers or competition; and, (3) is not one that

4  consumers themselves could reasonably have avoided.

5    134.   Here, Defendant's conduct has caused and continues to cause

6  substantial injury to Plaintiff and members of the Class.  Plaintiff and members of

7  the Class have suffered injury in fact due to Defendant's unilateral decision to

8  require subscription service for Defendant's app.  Thus, Defendant's conduct has

9  caused substantial injury to Plaintiff and the members of the Sub-Class.

10    135.   Moreover, Defendant's conduct as alleged herein solely benefits

11  Defendant while providing no benefit of any kind to any consumer.  Such

12  deception utilized by Defendant convinced Plaintiff and members of the Class that

13  the Defendant's app was free and would not require a fee for its reasonable use.

14  Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not

15  outweighed by any countervailing benefits to consumers.

16    136.   Finally, the injury suffered by Plaintiff and members of the Class is

17  not an injury that these consumers could reasonably have avoided.  After

18  Defendant falsely and universally represented that Defendant's app was available

19  for "free," these consumers suffered injury in fact due to Defendant's refusal to

20  continue to make said app available to consumers that downloaded the app.  As

21  such, Defendant took advantage of Defendant's position of perceived power in

22  order to deceive Plaintiff and the Class members to make a payment toward an

23  app only to then require a monthly payment after years of usage.  Therefore, the

24  injury suffered by Plaintiff and members of the Class is not an injury which these

25  consumers could reasonably have avoided.

26    137.   Further, Defendant subsequently advertised the Tinder Plus App as

27  being $2.99 per month, and unilaterally changed the price to $19.99 per month

28  and reserves the right to continue to do so after Plaintiff had purchased the

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

subscription.

138.    Defendant failed to disclose to Plaintiff or other consumers that it reserved the right to change its price at any time and at its sole discretion, and this omission was material to Plaintiff's purchase of the Tinder Plus account for $19.99 per month.

139.    By engaging in the above-described acts and practices, Tinder has committed one or more acts of unfair competition within the meaning of *Bus. & Prof. Code* §§ 17200, *et seq*.

140.    Such conduct is ongoing and continues to this date and violates the unfair prong of the UCL.

*UNLAWFUL*

141.    Defendants committed "unlawful" business acts and practices by:

(a)     engaging in conduct that violates California's Consumers Legal Remedies Act, *Civ. Code* §§ 1770(a)(5), (a)(7), (a)(9), (a)(13), (a)(14) and (a)(19);

(b)     The California Automatic Purchase Renewal Statute, Cal. *Bus. & Prof. Code* §§ 17600, *set seq*.;

(c)     California's Unruh Civil Rights Act ("UCRA"), Cal. *Civ. Code* §§51, *et seq*.;

(d)     Electronic Funds Act 15 U.S.C. § 1693, *et seq*.; and

(e)     engaging in conduct that violates the federal prohibition on bait and switch advertising tactics in violation of 16 C.F.R. 238, *et seq*.

142.    Such conduct is ongoing and continues to this date and violates the unlawful prong of the UCL.

*FRAUDULENT*

143.     In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

144.   The test for "fraud" as contemplated by Cal. *Bus. & Prof. Code* §§ 17200, *et seq*. is whether the public is likely to be deceived.  Unlike common law fraud, a UCL violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

145.   Defendant failed to disclose to Plaintiff or other consumers that it reserved the right to change its price at any time and at its sole discretion, and this omission was material to Plaintiff's purchase of the Tinder Plus account for $19.99 per month.

146.   Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Plaintiff agreed to pay, download and use Defendant's "free" app only to be surprised by Defendant's new requirement for a monthly subscription payment.

147.   Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff.  For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

148.   Thus, Defendant's conduct has violated the "fraudulent" prong of Cal. *Bus. & Prof. Code* § 17200.

149.   Such conduct is ongoing and continues to this date and violates the fraudulent prong of the UCL.

150.   Plaintiff seeks declaratory relief, restitution and disgorgement of all profits obtained.

///

///

///

///

///

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

# SIXTH CAUSE OF ACTION

## (VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE §§ 1750, *ET SEQ.*)

### (Against All Defendants on Behalf of Plaintiff and the Class)

151.    Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

152.    The California Consumers Legal Remedies Act (the "CLRA"), Cal. *Civ. Code* §§ 1770, *et seq.*, was enacted to protect consumers against unfair and deceptive business practices.  It creates a non-exclusive statutory remedy for unfair methods of competition and unfair or deceptive acts or business practices.  Its self-declared purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection.  Cal. *Civ. Code* ' 1760.  The CLRA was designed to be liberally construed and applied in favor of consumers to promote its underlying purposes.  *Id*.  The CLRA applies to Tinder's acts and practices described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to Plaintiff and others similarly situated.

153.    The Tinder service of entering a virtual dating club is a "service" within the meaning of Cal. *Civ. Code* § 1761(6), and the transactions/agreements are "transactions" within the meaning of Cal. *Civ. Code* § 1761(e).

154.    Plaintiff is a "consumer" within the meaning of Cal. *Civ. Code* § 1761(d).

155.    The Consumers Legal Remedies Act, Cal. *Civ. Code* §§ 1750, *et seq.* (the "CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices," including but not limited to:

(a)    Cal. *Civ. Code* § 1770(a)(5) "Representing that goods or services

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025

1 | haves sponsorship, approval, characteristics, ingredients, uses,

2 | benefits, or quantities which they do not have or that a person has a

3 | sponsorship, approval, status, affiliation, or connection which he or

4 | she does not have";

5 | (b) Cal. *Civ. Code* § 1770(a)(7) "Representing that goods or services are

6 | of a particular standard, quality, or grade, or that goods are of a

7 | particular style or model, if they are of another";

8 | (c) Cal. *Civ. Code* § 1770(a)(9) "Advertising goods or service with

9 | intent not to sell them as advertised";

10 | (d) Cal. *Civ. Code* § 1770(a)(13) "Making false or misleading statements

11 | of fact concerning reasons for, existence of, or amounts of price

12 | reductions";

13 | (e) Cal. *Civ. Code* § 1770(a)(14) "Represent that a transaction confers or

14 | involves rights, remedies, or obligations which it does not have or

15 | involve, or which are prohibited by law";

16 | (f) Cal. *Civ. Code* § 1770(a)(16) "Represent that the subject of a

17 | transaction has been supplied in accordance with a previous

18 | representation when it has not"; and

19 | (g) Cal. *Civ. Code* § 1770(a)(19) "Inserting an unconscionable provision

20 | in the contract.

21 | 156. Any waiver by Plaintiff and Class Members of the provisions of the

22 | CLRA is contrary to public policy and is unenforceable and void under Cal. *Civ.*

23 | *Code* § 1751.

24 | 157. Pursuant to Cal. *Civ. Code* § 1782, Plaintiff intends to notify

25 | Defendants of the particular violations of Cal. *Civ. Code* § 1770 (the "Notice

26 | Letter"). If Tinder fails to comply with Plaintiff's demands within thirty days of

27 | receipt of the Notice Letter, pursuant to Cal. *Civ. Code* § 1782, Plaintiff will

28 | amend this Complaint to request damages and other monetary relief under the

CLRA.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

1. Certifying the Class and/or Subclasses as requested herein;

2. Providing such further relief as may be just and proper.

3. Appointing Plaintiff and his counsel to represent the Class and/or Subclasses;

In addition, Plaintiff, and The Class Members pray for further judgment as follows:

4. Restitution of the funds improperly obtained by Defendants;

5. Any and all statutory enhanced damages;

6. All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

7. for equitable and injunctive relief, including pursuant to Cal. *Bus. & Prof. Code* § 17203; and

8. any and all other relief that this Court deems just and proper.

Dated:  April 28, 2015                    Respectfully submitted,

By:  */s/ John P. Kristensen*

John P. Kristensen (SBN 224132)
*john@kristensenlaw.com*
David L. Weisberg (SBN 211675)
*david@kristensenlaw.com*
**KRISTENSEN WEISBERG, LLP**
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025
Telephone:  (310) 507-7924
Fax:  (310) 507-7906

Attorneys for Plaintiffs

Kristensen Weisberg, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all such triable claims.

Dated:  April 28, 2015                    Respectfully submitted,

By:  */s/ John P. Kristensen*

John P. Kristensen (SBN 224132)
*john@kristensenlaw.com*
David L. Weisberg (SBN 211675)
*david@kristensenlaw.com*
**KRISTENSEN WEISBERG, LLP**
12304 Santa Monica Blvd., Suite 100
Los Angeles, California 90025
Telephone:  (310) 507-7924
Fax:  (310) 507-7906

Attorneys for Plaintiffs

**DECLARATION OF MICHAEL MANAPOL**

**PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)**

I, Michael Manapol, declare as follows:

1.     I submit this declaration pursuant to Section 1780(d) of the California Consumers Legal Remedies Act.  I have personal knowledge of the matters set forth below and if called as a witness, I could and would be competent to testify thereto.

2.     At all relevant times, I have been a resident of California.  It is my understanding that defendant Tinder is a corporation organized and existing under the laws of the state of California, with its principal place of business and nerve center in Los Angeles County located at 8899 Beverly Boulevard, West Hollywood, California 90048 and conducts business out of California.

3.     It is my understanding that defendants Match and IAC also conduct business in Los Angeles, County.

4.     Lastly, a substantial portion of the transactions involving myself and Tinder as well as the transactions between Tinder and the putative Class (since Tinder is based in Los Angeles County) occurred in Los Angeles County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 27, 2015 in West Hollywood, California

_____
Michael Manapol

Kristensen Weisberg, LLP
12304 Santa Monica Blvd, Suite 100
Los Angeles, California 90025